

**NUMBER 13-08-00640-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**RICHARD G. ROTH,**                                                      **Appellant,**

**v.**

**JACLYN L. ROTH,**                                                      **Appellee.**

**On appeal from the County Court at Law No. 1
of Hidalgo County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Vela
Memorandum Opinion by Justice Yañez**

This is an appeal from a judgment entered in the divorce of appellant, Richard G. Roth, from appellee, Jaclyn Roth. By two issues, Richard contends that the trial court erred in: (1) entering provisions in the final divorce decree that were inconsistent with the parties' written settlement agreement; and (2) ordering him to pay spousal maintenance that accrued after the parties signed the settlement agreement. We affirm, in part, reverse

and remand, in part, and dismiss, in part.

## I. BACKGROUND

Jaclyn filed for divorce in March 2007. On July 16, 2008, the parties entered into a written settlement agreement ("the agreement") pursuant to section 6.604 of the family code.[1] The agreement, which is slightly longer than two single-spaced typewritten pages, addresses matters regarding the division of community property, including the disposition of the Roth Law Firm, P.C., and treatment of 2007 and 2008 income taxes.

At a hearing on September 30, 2008, Jaclyn's counsel advised the court that several "controversies" remained "unresolved" by the agreement and requested that the court rule on those matters. Specifically, Jaclyn's counsel argued that a $104,262.06 loan to Richard from the law firm's shareholders was an "account receivable" that was not included in the agreement because it was "overlooked," and that it should be divided "50/50" between the parties. Jaclyn's counsel also asked the court to order Richard to continue her health insurance coverage until she could convert the policy to an individual policy.

In response, Richard's counsel argued that the parties negotiated for Jaclyn's share of the law firm, which was reflected in the agreement as a percentage interest in certain cases in progress. Thus, Jaclyn's assertion that she was entitled to a share in the "account receivable" was simply an attempt to add to the agreement by "tack[ing] on" an additional $50,000. Similarly, Richard's counsel argued that the agreement did not address Jaclyn's health insurance coverage and the request was "just another example of trying to add something to the agreement." Richard's counsel argued that the trial court had no authority

---

[1] See TEX. FAM. CODE ANN. § 6.604 (Vernon 2006). "[Section 6.604] provides for the enforcement of an informal settlement agreement reached between parties, as long as the agreement bears the same formalities required of an enforceable mediated settlement agreement . . . ." Sampson & Tindall, TEX. FAM. CODE ANN., § 6.604, Comment, p. 83 (2010).

to modify or add to the agreement; he urged the trial court to sign a final divorce decree that incorporated the agreement by reference.

The trial court also heard the parties' arguments regarding Jaclyn's motion to enforce temporary support. On July 11, 2007, the trial court ordered Richard to pay Jaclyn temporary spousal support in the amount of $7,500 per month. After the parties signed the agreement on July 16, 2008, Richard failed to pay any spousal support for August and September 2008. Richard argued that his obligation to pay temporary support terminated when the parties signed the agreement.

At the conclusion of the hearing, the trial court: (1) granted the divorce; (2) approved the July 16, 2008 agreement; (3) declined to divide the $104,262.06 "account receivable"; (4) declined to order Richard to continue payment for Jaclyn's health insurance; and (5) ordered Richard to pay Jaclyn spousal support of $3,500 for August and September.[2] That same day, the trial court signed the final divorce decree, which was submitted by Jaclyn's counsel.[3]

Richard filed a motion for reconsideration, in which he complained that the final divorce decree did not conform to the agreement because it "contain[ed] more obligations by [Richard] and other matters not agreed to regarding property division." The trial court held a hearing on Richard's motion on October 22, 2008. At the hearing, Richard's counsel

---

[2] We note that although the trial court ordered Richard to pay spousal maintenance payments of $3,500.00 for August and September, the record contains a contempt order, signed by the trial court on October 1, 2008, ordering Richard to pay spousal payments of $7,500.00 for August and September, for a total of $15,000.00 due to Jaclyn. Apparently, neither party brought this discrepancy to the attention of the trial court. In Richard's Motion for Reconsideration, filed on October 9, 2008, he did not complain of the discrepancy or of the trial court's October 1, 2008 order requiring him to pay Jaclyn $15,000.00 in spousal support payments. Similarly, at the October 22, 2008 hearing on Richard's Motion for Reconsideration, there was no mention of the order requiring Richard to pay Jaclyn $15,000.00 for spousal maintenance.

[3] The final divorce decree is twenty double-spaced typewritten pages long.

argued that the final divorce decree contained several material differences from the agreement, the most significant of which concerns the treatment of income taxes for 2007 and 2008. Richard's counsel argued that application of the decree's provisions regarding income tax and earnings for 2007 and 2008—which award each party credit for half of the estimated tax payments and withholding tax payments made during the period—would result in Richard owing approximately $110,000 in additional taxes, while Jaclyn would receive a net "refund" of approximately $110,000.[4] According to Richard's counsel, the provisions were "not part of the agreement" and "simply [result in] a redistribution of income" in Jaclyn's favor. Richard's counsel also argued that the provisions regarding income taxes in both the agreement and the final decree are inconsistent with the requirements of the Internal Revenue Code. On October 30, 2008, the court denied Richard's motion for reconsideration. This appeal ensued.

## II. TERMS OF THE SETTLEMENT AGREEMENT

By his first issue, Richard contends that the divorce decree did not conform to the agreement because it added terms and conditions regarding: (1) the treatment of income taxes for 2007 and 2008; and (2) the disposition of the Roth law firm.

## A. Applicable Law

The agreement states that it is a "written settlement agreement pursuant to Section 6.604 of the Texas Family Code."[5] Section 6.604, which was enacted in 2005, provides:

    (a)    The parties to a suit for dissolution of a marriage may agree to one or more informal settlement conferences and may agree that the settlement conferences may be conducted with or without the

---

[4] The decree's provisions and Richard's argument are discussed more fully below.

[5] See TEX. FAM. CODE ANN. § 6.604.

4

presence of the parties' attorneys, if any.

(b)    A written settlement agreement reached at an informal settlement conference is binding on the parties if the agreement:

  (1)    provides, in a prominently displayed statement that is in boldfaced type or in capital letters or underlined, that the agreement is not subject to revocation;

  (2)    is signed by each party to the agreement; and

  (3)    is signed by the party's attorney, if any, who is present at the time the agreement is signed.

(c)    If a written settlement agreement meets the requirements of Subsection (b), a party is entitled to judgment on the settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

(d)    If the court finds that the terms of the written informal settlement agreement are just and right, those terms are binding on the court. If the court approves the agreement, the court may set forth the agreement in full or incorporate the agreement by reference in the final decree.

(e)    If the court finds that the terms of the written informal settlement agreement are not just and right, the court may request the parties to submit a revised agreement or set the case for a contested hearing.[6]

The agreement in this case met the requirements of section 6.604. A final judgment rendered upon a settlement agreement must be in strict and literal compliance with the agreement.[7]  Section 6.604(d) provides that if, as here, the trial court approves an agreement pursuant to this section, it "may set forth the agreement in full or incorporate

---

[6] *Id.*

[7] *See Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006); *In re Marriage of Joyner*, 196 S.W.3d 883, 890-91 (Tex. App.–Texarkana 2006, pet. denied) (noting that section 6.602, governing mediated settlement agreements, does not authorize the trial court to substitute its judgment for a mediated settlement agreement); *see also Loehr v. Loehr*, No. 13-08-00380-CV, 2009 Tex. App. LEXIS 6863, at **8-9 (Tex. App.–Corpus Christi Aug. 28, 2009, no pet.) (mem. op.).

the agreement by reference in the final decree."[8]  The statute does not authorize a court

to modify an agreement, to resolve ambiguities or otherwise, before incorporating it into a

decree.[9]  A trial court's modifications to settlement agreements are grounds for reversal

where the modifications "add terms, significantly alter the original terms, or undermine the

intent of the parties."[10]

## B.  Analysis

By his first sub-issue, Richard argues that the divorce decree contained language

addressing the treatment of withholding and estimated tax payments for the parties' 2007

and 2008 income taxes that (1) was not included in the agreement and (2) resulted in an

unintended windfall of approximately $110,000 to Jaclyn.  Paragraph number 6 of the

agreement states:

> 2007 and 2008 taxes through the date of divorce.  The income of the parties
> is partitioned per the Texas Family Code.  Each party shall pay taxes on their
> individual personal earnings/income and on any property or business.  Any
> refund and/or overpayments for the time period above are to be split 50/50.
> Parties shall file separate returns for the time period above.

The divorce decree states, in pertinent part:

> The parties have agreed to partition their income and earnings for the
> calendar years 2007 and 2008 through the date of entry of this Final Decree
> of Divorce.  Pursuant to that agreement, the Court hereby PARTITIONS (and
> for the purpose of reporting and determining income tax liability for the years
> 2007 and 2008), 100% of the parties['] income, gain, loss and deductions
> attributable to a party, from property awarded to that party in this agreement,
> as his or her sole and separate property as if that party had been single and
> unmarried from January 1, 2007 through the date of entry of this Final
> Decree of Divorce and each party in filing their respective income tax returns

---

[8]TEX. FAM. CODE ANN. § 6.604(d).

[9] *See id.*; *see also Engineer v. Engineer*, 187 S.W.3d 625, 626-27 (Tex. App.–Houston [14th Dist.]
2006, no pet.) (holding trial court erred by modifying an ambiguous alimony provision).

[10] *Beyers v. Roberts*, 199 S.W.3d 354, 362 (Tex. App.–Houston [1st Dist.] 2006, pet. denied).

shall report his or her income consistent with this partition. IT IS FURTHER ORDERED that for the purposes of determining each party's income tax liability, any property awarded to a party in this agreement shall be deemed to have been partitioned to that party and have been that party's separate property as of January 1, 2007 and thereafter. IT IS FURTHER ORDERED AND DECREED that each party is awarded and shall use as a credit against his or her tax liabilities one-half (1/2) of any estimated tax payments or current or prior year overpayments made during the time period above and one-half (1/2) of any withholding tax payments. Further, any expenditures that are tax deductible are assigned to the party who made those payments.

At the October 22, 2008 hearing on Richard's motion for reconsideration, Jaclyn's certified public accountant expert, William Bradley, testified that he prepared Jaclyn's income tax return for 2007. In preparing Jaclyn's return, Bradley credited her with half of the withholding and estimated payments already made, resulting in a $220,000 refund to her, which would be shared "50/50" with Richard. On re-cross examination, Bradley testified as follows:

Q [Richard's counsel]: And you know that he [Richard] had paid approximately $440,000 in taxes to cover that income, correct?

A [Bradley]: He paid $440,000 in taxes, yes, sir.

Q: And the way that you have done this, Mr. Roth has had taken away from his side of the ledger $220,000 or half of that $440,000 that he had paid to the IRS, correct?

[Jaclyn's counsel]: Object to form.

A [Bradley]: It's in the final decree of divorce.

Q [Richard's counsel]: And the result of that, if you assume that the $440,000 was the appropriate amount to pay, to cover his tax liability for 2007, he is now going to have to come up with another $220,000 to pay the IRS, correct?

[Jaclyn's counsel]: Objection as to speculation.

7

A [Bradley]: You know, I would have to compute the numbers. You're also assuming somewhere in there that he's going to—Mrs. Roth will have to give him back about 110,000. And I don't know what his additional taxes he's got to pay.

Q [Richard's counsel]: Well[,] the IRS isn't going to wait for Mrs. Roth to pay him $110,000. They wanted their money back on April 15th, correct?

A: At the latest, yeah.

Q: At the latest?

A: I'm sure he's incurring a penalty as a result of not paying in April.

Q: And he did pay in April, though, it's just now retroactively you've taken or Mrs. Roth has taken $220,000 off of his side of the ledger, correct?

A: Based on the final decree of divorce, which I followed.

Q: And Mr. Bradley, believe me, I'm not quarrelling [sic] with you here, I'm just trying to get the facts out of what happened.

A: Yes, sir.

Q: If—you know from reviewing information that the $440,000 that Mr. Roth paid during the calendar year 2007 and then on April 15th was roughly the amount necessary to cover his tax liability, correct?

A: Well, I—it probably was. I received a—somewhere along the road I received from Mr. Seeman [Richard's CPA] an estimate of '07 taxes and it looks like their joint taxes from '07 was about that.

Q: Okay. And so of the 400—

A: Of the 400, I'm sorry.

8

Q: Yeah. And so if he's now been deprived of $220,000[,] then as far—if you reported it the way that you reported it, I'm sorry. If Mr. Seeman tracked the way you were doing it[,] first of all[,] Mr. Roth just talking taxes[,] not penalties or interest[,] would have an additional tax liability of $220,000 approximately?

A: That's probably a reasonable guess.

. . . .

Q: Believe me, we understand[,] Mr. Bradley. Nobody's going to go to the bank with these numbers. So the net effect, even if Mr. Roth eventually gets $110,000 back from Mrs. Roth's half of her refund, is he still going to be 110,000 plus penalties and interest in the hole?

A: Okay.

Q: Do you agree with that?

[Jaclyn's counsel]: Objection, speculation.

A: That sounds about right.

The agreement is silent as to the treatment of any estimated or withholding tax payments made during the relevant time period. Thus, the provisions in the final decree awarding each party "credit" for half of any estimated and withholding tax payments improperly added material terms that the parties did not agree to.[11] Accordingly, we sustain Richard's first sub-issue and need not address his second sub-issue challenging the decree.[12]

### III. SPOUSAL MAINTENANCE

---

[11] *See Chisholm*, 209 S.W.3d at 98.

[12] *See Engineer*, 187 S.W.3d at 626 ("If an appellate court determines that the decree contains terms and provisions that were never agreed to by the parties, it must reverse the judgment and remand the cause.").

By his second issue, Richard contends the trial court erred in ordering him to pay spousal maintenance that accrued after the parties signed the settlement agreement. Jaclyn argues that we lack jurisdiction over Richard's appeal of the trial court's October 1, 2008 order on Jaclyn's First Amended Motion for Enforcement and Motion for Contempt because: (1) rulings in contempt proceedings may only be attacked by writ of habeas corpus, and are not subject to direct appeal; and (2) Richard did not file a timely notice of appeal from the contempt order.

Following the September 30 hearing, the trial court signed the final divorce decree on October 1, 2008. That same day, the trial court signed a contempt order ordering Richard to pay Jaclyn $15,000 as spousal support arrearage. On November 10, 2008, Richard filed a notice of appeal, in which he appealed from the final divorce decree signed on October 1, 2008. On May 22, 2009, Richard filed an amended notice of appeal, in which he attempted to appeal from "that portion of the October 1, 2009 [sic] Order Granting Motion to Enforce awarding $15,000.00 to Jaclyn Roth."

We do not have jurisdiction to review a contempt order by direct appeal.[13] "This is so even when the contempt order is being appealed along with a judgment that is appealable."[14] Accordingly, we dismiss that portion of Richard's appeal challenging the contempt order.

## IV. CONCLUSION

As to the granting of the divorce, we affirm the trial court's judgment. However, as

---

[13] *See Ex parte Williams*, 690 S.W.2d 243, 243 n.1 (Tex. 1985); *In re Rich*, 993 S.W.2d 272, 273 (Tex. App.–San Antonio 1999, no pet.); *see also In re K.S.E.*, No. 04-02-319-CV, 2003 Tex. App. LEXIS 4680, at *2 (Tex. App.–San Antonio June 4, 2003, no pet.) (mem. op.).

[14] *In re Gonzalez*, 993 S.W.2d 147, 157 (Tex. App.–San Antonio 1999, no pet.).

to the modification of the agreement, we reverse the trial court's judgment and remand to the trial court for further proceedings consistent with this opinion. We dismiss that portion of the appeal challenging the contempt order awarding Jaclyn $15,000 as spousal support arrearage.

LINDA REYNA YAÑEZ,
Justice

Delivered and filed the
30th day of December, 2010.